# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 17, 2015

Lyle W. Cayce
Clerk

No. 14-20204

SEALED APPELLANT 1; SEALED APPELLANT 2; SEALED APPELLANT 3; SEALED APPELLANT 4,

United States District Court
Southern District of Texas
FILED

SEP - 9 2015

David J. Bradley, Clerk of Court

Plaintiffs–Appellants,

v.

SEALED APPELLEE 1; SEALED APPELLEE 2,

Defendants–Appellees.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:10-CV-1148

---

Before KING, DAVIS, and OWEN, Circuit Judges.

PER CURIAM:*

The plaintiffs in the district court sued a Saudi Arabian corporation, to which we will refer as Father's Co., and an executive of that company who is a Saudi Arabian citizen, to whom we will refer as Father. The plaintiffs rely on a contract containing a forum-selection clause to establish personal jurisdiction over these defendants, although neither of the defendants is actually a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

signatory to the contract. The plaintiffs assert that the contract was signed by authorized agents of the defendants, one of whom is the son of Father. We will refer to this individual (also a Saudi national) as Son. The other alleged agent is a Saudi company, to which we will refer as Son's Co., that plaintiffs contend is an affiliate of Father's Co. and managed by Son. The district court held that the plaintiffs failed to provide any competent evidence that the signatories to the contract containing the forum-selection clause were acting as agents of the defendants in any of the dealings or contacts with the plaintiffs. The district court accordingly dismissed the suit for lack of personal jurisdiction. We affirm.

I

Each of the plaintiffs expected to receive commissions and fees from a purchase by Father and Father's Co. of an international investment instrument known as a Bank Guarantee. An individual residing in New Mexico, to whom we will refer as PltfNM, and a company with which he was connected, to which we will refer as the NM Corp., expected to be involved in the transaction on the buyer's side. A Texas businessman, to whom we shall refer as PltfTX, and an Illinois businessman, to whom we shall refer as PltfIL, expected to participate on the seller's side of the transaction.

An employee of Father's Co., to whom we will refer as Smith, contacted PltfNM. Smith allegedly informed PltfNM that Father had asked Smith to seek international investment opportunities in Bank Guarantees. According to PltfNM, Smith stated that Father's Co. and Father would be the principals and signatories on the buyer's side of the transaction. Relying on Smith's statements, PltfNM, on behalf of his corporation, and with the assistance of others, began seeking a Bank-Guarantee transaction.

PltfNM attempted to find a potential Bank-Guarantee seller but was met with resistance to investing with Father's Co. and Father, and PltfNM reported

this to Smith. Smith purportedly told PltfNM that Father believed there would be less resistance if Son and Son's Co. acted on behalf of Father's Co. and Father. PltfNM understood that although Son and Son's Co. would appear as the buyers of the Bank Guarantees, Father's Co. and Father would be the actual buyers and Father's Co. would fund the purchase. Because of this understanding, PltfNM requested Smith to provide proof of Father's Co.'s good standing. Smith subsequently sent PltfNM a copy of a 2003 letter from the U.S. Embassy in Saudi Arabia affirming Father's Co.'s good standing in the international business community. The contacts and transactions at issue in this suit commenced in 2009, approximately six years after the date of this letter. In June 2009, PltfNM contacted the U.S. Consulate in Jeddah, Saudi Arabia, and with Smith's assistance, PltfNM requested and received a letter from the Consulate dated June 23, 2009, stating that Son and Son's Co. were an "established business" that had a positive reputation in the Jeddah business community.

PltfTX is a businessman who is very familiar with international investment instruments. Smith contacted PltfTX, and PltfTX involved PltfIL in seeking to structure a transaction. A telephone conference between Smith, Son, and PltfTX occurred in which Son confirmed that he was interested in purchasing an international investment instrument, hopefully a Bank Guarantee, and Son asked PltfTX if he would assist in finding a seller. PltfTX advised Son that he had the resources and contacts to do so, and Son instructed PltfTX to contact PltfNM and NM Corp. Son told PltfTX that NM Corp. and PltfNM were his legal representatives in the United States regarding these investment opportunities. PltfTX was successful in locating Bank Guarantees of the type that Son had said he was seeking to purchase.

When Bank Guarantees to be purchased had been located, Smith introduced PltfNM by telephone to a man who identified himself as the account

manager at a Saudi bank for both Father's Co. and Son's Co. PltfNM requested, and the bank sent, a letter purporting to explain the relationship between these two companies. This June 24, 2009, letter stated: "We're here to confirm that [Son's Co.] is a part of [Father's Co.] . . . This letter was provided as requested by the client . . . ." Enclosed with the letter was a screenshot of Father's Co.'s bank account information, which reflected substantial liquid and cash equivalent assets. Six weeks later, when the banking information required updating, the bank sent another, nearly identical letter, and another screenshot of the account's position.

In early July, Smith informed PltfNM that Father approved of the transaction, and Smith sent PltfNM the Non-Circumvention, Non-Disclosure & Working Agreement (the Agreement) signed by Son, Son's Co., and Smith. The plaintiffs allege that the Agreement entitled them to receive a commission for every tranche of Bank Guarantees purchased. The Agreement contained a forum-selection clause that read: "in the event of dispute, the laws of the State of Texas will apply first with the US District Court for the Southern District of Texas as the court of venue . . . . The signing parties hereby accept such selected jurisdiction as the exclusive venue."

The plaintiffs believe that Bank-Guarantee transactions were consummated that would have entitled them to commissions under the Agreement. They commenced this diversity action in the district court alleging numerous state-law claims against Son, Son's Co., Father, and Father's Co. Father's Co. and Father moved to dismiss for lack of personal jurisdiction and submitted affidavits from Smith and Son, which stated in part that they were not acting on behalf of Father's Co. or Father when they signed the Agreement and that Son's Co. was not affiliated with Father's Co. in any way. Without holding an evidentiary hearing, the district court originally denied the motion, concluding that the plaintiffs had established a prima face case that the

signatories to the Agreement were acting as agents for Father's Co. and Father. However, a motion to reconsider was filed, and the court changed course. The court held that the plaintiffs had presented no admissible evidence to establish an agency relationship, and therefore, the plaintiffs had not established a prima facie case of personal jurisdiction. The district court dismissed the suit against Father's Co. and Father. The plaintiffs appeal.

## II

The plaintiffs bear the burden of establishing personal jurisdiction.[1] We review the district court's dismissal for lack of personal jurisdiction de novo.[2] Because the district court did not hold an evidentiary hearing, the plaintiffs were required to present only a prima facie case of personal jurisdiction.[3] While the district court has discretion in determining the amount of discovery it will consider at this stage, and actually considered affidavits and certain documentary evidence, "unless there is a full and fair hearing, [a district court] should not act as a fact finder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts."[4] The plaintiffs must ultimately prove by a preponderance of the evidence that jurisdiction is proper.[5] But the burden is not raised to a preponderance of the evidence until trial or "after a pretrial evidentiary hearing confined to the

---

[1] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).

[2] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam) (citing *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000)).

[3] *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (citing *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383, 384 (5th Cir. 1989)).

[4] *Id.* (citing, among others, *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999)).

[5] *Id.* (citing *Brown v. Slenker*, 220 F.3d 411, 419 (5th Cir. 2000)).

jurisdictional issue, where both sides have the opportunity to present their cases fully."[6]

In evaluating whether the plaintiffs have presented a prima facie case of personal jurisdiction, we will not "credit conclusory allegations, even if uncontroverted."[7] To the extent the plaintiffs' evidence is hearsay and is "directly contradicted by defendant[s'] affidavit[s]," hearsay evidence "will not defeat a motion for dismissal under Rule 12(b)(2)."[8] Therefore, because Father's Co. and Father submitted affidavits directly contradicting the plaintiffs' jurisdictional allegations, we must determine whether the plaintiffs have established a prima facie case of personal jurisdiction through nonconclusory allegations supported by admissible evidence.

## III

In a diversity action, a federal court may exercise personal jurisdiction over a nonresident defendant to the extent permitted by the law of the state in which the court sits.[9] The only plausible basis for personal jurisdiction over Father's Co. and Father is an alleged agency relationship. We therefore apply

---

[6] *Id.* at 241-42 (citing, among others, *Felch v. Transportes Lar-Mex SA*, 92 F.3d 320, 326-27 (5th Cir. 1996)).

[7] *Panda Brandywine Corp.*, 253 F.3d at 869.

[8] *Cooper v. McDermott Int'l Inc.*, 62 F.3d 395, 1995 WL 450209, at *5 (5th Cir. July 6, 1995) (unpublished but precedential under 5TH CIR. R. 47.5.3); *see also Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 506 (6th Cir. 2014) (stating in the context of a Rule 12(b)(2) motion: "In general, it is improper for a court to consider hearsay statements when ruling on a motion to dismiss" (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986))); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009) (plaintiff could not use hearsay evidence to establish personal jurisdiction over the defendant when the hearsay statements were controverted by the defendant's affidavit).

[9] FED. R. CIV P. 4(e)(1); *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013).

Texas agency law to determine whether a Texas court would have exercised jurisdiction.[10]

An exercise of personal jurisdiction must also comport with the requirements of constitutional due process.[11] An exercise of personal jurisdiction is constitutional when "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state . . . , and (2) exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."[12] Personal jurisdiction, however, is "a waivable right,"[13] and a freely-negotiated forum-selection clause is sufficient to constitutionally establish personal jurisdiction.[14]

The plaintiffs assert that Father's Co. and Father are subject to the jurisdiction of the Southern District of Texas under the forum-selection clause found in the Agreement signed by Son, Son's Co., and Smith. If one or more of them were acting as Father's Co.'s and Father's agents, jurisdiction over

---

[10] *See McFadin v. Gerber*, 587 F.3d 753, 761-62 & n.25 (5th Cir. 2009) (applying Texas agency law to resolve issue of whether nonresident defendant had Texas contacts established by an alleged in-state agent).

[11] *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013) ("A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.").

[12] *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (alteration omitted) (quoting *Panda Brandywine Corp.*, 253 F.3d at 867).

[13] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).

[14] *Id.* ("[P]arties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, their enforcement Smiths not offend due process." (internal citations and quotation marks omitted)); *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 793 (7th Cir. 2014) ("A forum-selection clause can work only if both parties are amenable to suit in the chosen forum; to agree to a forum thus is to agree to personal jurisdiction in that forum."); *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1407 (9th Cir. 1994) ("[T]he district court erred in concluding that the forum selection clause . . . could not confer personal jurisdiction over the parties who entered into it.").

Father's Co. and Father would be proper.[15] Therefore, our decision turns on whether the plaintiffs established a prima facie showing of agency.

Under Texas agency law, "[a]n agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)."[16] We affirm the judgment of the district court because the plaintiffs have failed to proffer any admissible evidence that could establish either actual or apparent authority.

## A

To establish actual authority, the plaintiffs must show that Father's Co. or Father communicated to Son, Son's Co., or Smith that they had authority to bind Father's Co. or Father to the Agreement.[17] The only evidence in the record of such communications comes from PltfNM's affidavit. However, the relevant statements in his affidavit are inadmissible on a Rule 12(b)(2) motion. For example, in his affidavit, PltfNM states:

> [Smith] . . . told me . . . that [Father] wanted to see if the [Bank Guarantee] investment transaction could be "orchestrated" (his word, not mine) by having his son, [Son], and [Son's Co.] act on

---

[15] *See Bridas S.A.P.I.C v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003) (recognizing agency as a basis for binding principal nonsignatories to an arbitration agreement); *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (noting that arbitration agreements and forum selection clauses are indistinguishable for enforceability purposes); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014) ("[A] corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there."); *Taishan Gypsum Co. v. Gross (In re Chinese-Manufactured Drywall Prods. Liab. Litig.)*, 753 F.3d 521, 531 (5th Cir. 2014) ("*Daimler* . . . embraces the significance of a principal-agent relationship to the specific-jurisdiction analysis, though it suggests that an agency relationship alone may not be dispositive.").

[16] *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (citing *Hester Int'l Corp. v. Fed. Rep. of Nigeria*, 879 F.2d 170, 181 (5th Cir. 1989)).

[17] *Id.*; *CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 899 (Tex. App.—Dallas 2007, pet. denied).

behalf of [Father] and [Father's Co.] in going forward with the [Bank Guarantee] that we had been working on.

This statement is hearsay. The plaintiffs are offering PltfNM's recount of Smith's statement for its truth: that Father wanted Son and Son's Co. to act on behalf of himself and Father's Co.[18] The plaintiffs argue that Rule 801(d)(2)(D)[19] removes these statements from the definition of hearsay because Smith made the statement while acting as Father's Co.'s and Father's agent. But under Rule 801(d)(2), when the court considers the admissibility of a statement by a purported agent, the statement "does not by itself establish . . . the existence or scope" of the agency relationship under subsection (D).[20] Therefore, the plaintiffs may not use hearsay statements to both establish the existence and scope of Smith's agency relationship and remove those very same statements from the definition of hearsay.[21]

---

[18] *See* FED. R. EVID. 801(c) ("'Hearsay' means a statement that: (1) the declarant Smiths not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").

[19] Federal Rule of Evidence 801(d)(2)(D) provides:

> **(d) Statements That Are Not Hearsay.** A statement that meets the following conditions is not hearsay:
>
> . . .
>
> > **(2) An Opposing Party's Statement.** The statement is offered against an opposing party and:
> >
> > . . .
> >
> > > **(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed;
> >
> > . . .
> >
> > The statement must be considered but does not by itself establish . . . the existence or scope of the relationship under (D).

[20] FED. R. EVID. 801(d)(2).

[21] *Id.; see also Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1566 (11th Cir. 1991) ("It is well established that 'Rule 801(d)(2)(D) requires the *proffering party* to lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment.'" (quoting *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986))).

PltfNM's affidavit includes additional hearsay statements offered to prove actual authority, but all of these inadmissible statements are directly contradicted by affidavits submitted by Father's Co. and Smith. For example, Smith stated in his affidavit that he never had authority to enter a transaction on behalf of Father's Co. or Father and that he "specifically informed the Plaintiffs that [Father's Co.] and [Father] were not involved in any potential transaction." The plaintiffs may not establish a prima facie case of personal jurisdiction through inadmissible evidence when that evidence is directly contradicted by the defendants' affidavits.[22] Therefore, the plaintiffs have not made a sufficient showing of actual authority to establish personal jurisdiction over Father's Co. and Father.

**B**

The agency theory of apparent authority is based on estoppel.[23] "To establish apparent authority, one must show that a principal either knowingly permitted an agent to hold itself out as having authority or showed such lack of ordinary care as to clothe the agent with indicia of authority."[24] "[O]nly the conduct of the principal is relevant."[25]

---

[22] *Cooper v. McDermott Int'l, Inc.*, 62 F.3d 395, 1995 WL 450209, at *5 (5th Cir. July 6, 1995) (unpublished but precedential under 5TH CIR. R. 47.5.3) ("When directly contradicted by defendant's affidavit, hearsay evidence will not defeat a motion for dismissal under Rule 12(b)(2).").

[23] *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007).

[24] *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996) (per curiam); *accord Gaines*, 235 S.W.3d at 182.

[25] *Gaines*, 235 S.W.3d at 182 (citing *NationsBank*, 922 S.W.2d at 953); *accord Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985) ("Apparent authority is created as to a third person *by conduct of the principal* which, reasonably interpreted, causes the third person to believe that the principal consents to the act done on his behalf by the person purporting to act for him." (emphasis added) (citing RESTATEMENT (SECOND) OF AGENCY § 27)).

The plaintiffs rely on various documents in attempting to establish the apparent authority of Son, Son's Co., and Smith to execute the Agreement on behalf of Father's Co. and Father. First, the plaintiffs rely on the 2003 letter from the U.S. Embassy in Saudi Arabia that affirmed Father's Co.'s good standing. They argue that if Father's Co. were "not involved in the transaction or intended to be the ultimate beneficiary of it, [Father's Co.] would not have provided Plaintiffs with proof of their good standing in the business community." But the embassy letter was written years before Father's Co. and Father are alleged to have decided to pursue the underlying transactions, and the letter is not addressed to a specific entity or individual, let alone the plaintiffs. This demonstrates that the letter was not originally procured to serve as a representation to the plaintiffs. Furthermore, an email from Smith to PltfNM, from Smith's personal email address, indicates that Smith, not Father's Co. or Father, sent the plaintiffs the embassy letter. In his email, Smith stated: "There is a letter from the US Embassy in favor of [Father's Co.], but I will have access to it tomorrow as the office where it is kept is closed now. I used to have copy but cannot locate it now." Neither the letter nor Smith's email demonstrate a manifestation by Father's Co. or Father to the plaintiffs that Son, Son's Co., or Smith had authority to act on behalf of Father's Co. or Father. It is therefore not evidence of apparent authority.[26]

Second, the plaintiffs offer the two letters from the Saudi bank as proof that Father's Co. and Father cloaked the alleged agents with authority. The

---

[26] *See Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 913 (Tex. App.—Dallas 2008, no pet.) ("Only the conduct of the principal is relevant to determining whether apparent authority exists." (citing *Gaines*, 235 S.W.3d at 182 and *NationsBank*, 922 S.W.2d at 952-53)); *accord Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566 n.5 (1982) ("Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, *arising from and in accordance with the other's manifestations to such third persons.*" (emphasis added) (quoting RESTATEMENT (SECOND) OF AGENCY § 8 (1957))).

two relevant statements from these letters are: (1) "We're here to confirm that [Son's Co.] is a part of [Father's Co.]," and (2) "This letter was provided as requested by the client . . . ." But these statements are inadmissible hearsay and are directly contradicted by the affidavits submitted by Father's Co. and Father; they therefore cannot be used to establish a prima facie case of personal jurisdiction.[27] Furthermore, similar to the embassy letter, these letters written by the bank are not communications that can be attributed to either Father's Co. or Father. While the letters state that they were provided at the request of the client, it is ambiguous whether the term "client" refers to Father's Co., Son's Co., or another. Even assuming "client" refers to Father's Co., the statement that Father's Co. requested the letter would also be inadmissible hearsay and cannot be used to establish that Father's Co. or Father did in fact request the letter. Therefore, the bank letters cannot support a finding of apparent authority.

Third, the plaintiffs argue that screenshots of Father's Co.'s bank account enclosed with the bank letters are evidence that Father's Co. and Father "'held out' to Plaintiffs that [Smith], [Son] and/or [Son's Co.] had the authority to access, and ultimately use, these funds for the specific transaction at issue." But again, as with the letters from the embassy and the bank, the bank account screenshots are not themselves evidence of a communication by Father's Co. or Father to the plaintiffs and do not establish apparent authority. The plaintiffs argue that the account statements must have been requested by Father's Co. or Father because of the bank statements' "confidential nature," but there is no evidence, besides the screenshots themselves, indicating that Father's Co. or Father authorized the account information to be transmitted to the plaintiffs. Even assuming Father's Co. or Father did authorize the bank

_____

[27] *Cooper*, 62 F.3d 395, 1995 WL 450209, at *5.

to provide the plaintiffs with bank account screenshots, the screenshots did not purport to communicate that Son, Son's Co., or Smith have the authority to enter into a Bank-Guarantee transaction on behalf of Father's Co. or Father. Therefore, this evidence does not establish apparent authority.

## C

In the alternative, the plaintiffs invoke the single-business-enterprise theory to request this court to equitably pierce the veil between Father's Co. and Son's Co. However, the plaintiffs waived this argument by failing to raise it before the district court.[28]

\* \* \*

The judgment of the district court is AFFIRMED.

---

[28] *Celanese Corp. v. Martin K. Eby Constr. Co.*, 620 F.3d 529, 531 (5th Cir. 2010) ("The general rule of this court is that arguments not raised before the district court are waived and will not be considered on appeal.").